

**ORDERED in the Southern District of Florida on January 3, 2022.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

*Tagged Opinion*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

In re:

Anthony J. Vessillo,

    Debtor.

_____/

Case No. 14-16134-PDR

Chapter 7

Anthony J. Vessillo,

    Plaintiff,

v.

SunTrust Bank,

    Defendant.

_____/

Adv. Case No. 20-01393-PDR

## ORDER DENYING MOTION FOR DEFAULT JUDGMENT
## AND *SUA SPONTE* DISMISSING CASE WITH PREJUDICE

Can a chapter 7 debtor seek relief under the avoiding powers of § 544? Does "has" in 11 U.S.C. § 506 mean presently "have" or "had as of the petition date"? And

does the Court have subject matter jurisdiction to quiet title to property in which the estate has no interest? These are the questions presented by this adversary proceeding and the answers are fundamental to whether the Court has subject matter jurisdiction to strip a lien on the Debtor's homestead property many years after his Chapter 7 case was closed. The Court finds that it lacks subject matter jurisdiction and dismisses this case with prejudice.

## Background

The Debtor owns a Homestead in Fort Lauderdale, Florida.[1] On March 17, 2014, the Debtor filed a voluntary Chapter 7 petition and claimed the Homestead exempt.[2] The Debtor was discharged on June 27, 2014, and the Court issued its final decree and closed the case on June 11, 2015.[3] In 2019, the case was reopened to allow the Debtor to avoid certain liens against the Homestead under 11 U.S.C. § 522(f); the case was re-closed on February 27, 2020.[4]

On August 31, 2020, the Court, upon the Debtor's request, reopened the case again so the Debtor could file an adversary to avoid a lien held by SunTrust Bank recorded against his Homestead.[5] In the Complaint, the Debtor alleges that SunTrust held a note and mortgage on the Homestead which were the subject of state

---

[1] (Doc. 1, ¶ 7).

[2] *In re Vessillo*, No. 14-16134-PDR (the "Main Case") (Doc. 1) (Bankr. S.D. Fla. Mar. 17, 2014).

[3] (Main Case Docs. 26 & 41).

[4] (Main Case Docs. 54 & 89).

[5] (Main Case Docs. 90 & 97); (Doc. 1).

court litigation in which SunTrust obtained a money judgment ("Final Judgment"), that the Final Judgment was discharged, and that the statute of limitations has run for SunTrust to enforce the Final Judgment through foreclosure on the Homestead. Count I seeks "to determine the extent, validity, and priority of SunTrust's Claim of Lien" and Count II seeks to quiet title.

The Debtor served SunTrust, but SunTrust did not respond to the Complaint. Consequently, the Debtor seeks entry of final default judgment.[6] However, the Court must first determine whether it has subject matter jurisdiction and ordered the Debtor to brief the issue.[7] The Debtor argues the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) through both "arising under" and "related to" jurisdiction.

## Analysis

Subject matter jurisdiction defines the limits of a court's power to hear cases and resolve disputes. *Lightfoot v. Cendant Mortg. Corp.*, 17 S. Ct. 553, 560 (2017). Parties can neither waive nor consent to subject matter jurisdiction. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). The limits of a court's jurisdiction are so vital to the integrity of the judiciary that, where the Court identifies a potential jurisdictional issue, it is independently obligated to inquire into its authority to proceed. *See Hertz v. Friend*, 559 U.S. 77, 94 (2010). If the Court determines it lacks subject matter

---

[6] (Docs. 16 & 18).

[7] (Doc. 20 & 22).

jurisdiction, it is "constitutionally obligated" to dismiss the case. *Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 392 (11th Cir. 2018).

This Court has subject matter jurisdiction to hear any matter arising under title 11 or arising in or related to cases under title 11. *See* 11 U.S.C. § 157(a); 28 U.S.C. § 1334(b). "Arising under" proceedings are matters invoking a substantive right created by the Bankruptcy Code, "arising in" proceedings are generally thought to involve administrative-type matters within bankruptcy cases, and "related to" jurisdiction refers to cases where the outcome of the proceeding could conceivably affect the estate. *See Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).

### I. Count I

Count I seeks to value and determine the secured status of SunTrust's lien. Though the Debtor's complaint references § 544, none of the express language in the Complaint tracks with any portion of § 544. Rather, Count I's language directly mirrors § 506(a) and the Debtor's arguments in favor of the Court's exercise of jurisdiction focus solely on § 506(a), not § 544. However, for sake of completeness, the Court addresses both statutes.

#### A. 11 U.S.C. § 544

Under 11 U.S.C. § 544(b)(1),

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 544 is not meant to provide a Chapter 7 debtor with an avenue to avoid liens. Rather, § 544 is a "strong arm clause" for the trustee "to cut off secret and undisclosed claims against the debtor's property as of the beginning of the bankruptcy case." *See Smith v. Dynasty Grp., Inc. (In re Heritage Real Estate Inv., Inc.)*, No. 16-00040-NPO, 2017 WL 4693991, at *3 (Bankr. S.D. Miss. Oct. 17, 2017) (quoting *Consolidated Partners Inv. Co. v. Lake*, 152 B.R. 485, 490 (Bankr. N.D. Ohio 1993)); *see, e.g.*, *Welt v. Jacobson (In re Aqua Clear Tech., Inc.)*, 361 B.R. 567 (Bankr. S.D. Fla. 2007).

This is a Chapter 7 case. Though the Bankruptcy Code provides certain debtors, such as Chapter 11 debtors in possession, with the powers of a trustee, Chapter 7 debtors lack those powers. *See, e.g.*, 11 U.S.C. § 1107(a) (providing Chapter 11 debtors in possession with "all the rights … of a trustee"). The Debtor has not provided, nor can the Court find, any basis for a Chapter 7 debtor to utilize § 544 for his own benefit. Therefore, to whatever extent the Debtor seeks relief under § 544 in Count I, the Court in unable to provide it.

B.  11 U.S.C. § 506(a)

Under 11 U.S.C. § 506(a), the Court can value and determine the secured status of "an allowed claim of a creditor secured by a lien on property in which the estate has an interest." The Debtor seeks to value and determine the secured status of SunTrust's lien, which is secured by the Homestead. The Homestead was claimed exempt from the Estate on the Petition Date.[8] *See* 11 U.S.C. § 522(b)(1); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (explaining that, once the expiration

---

[8] Exemptions apply as of the petition date. *See* 11 U.S.C. § 522(b)(3)(A).

of the deadline to object to exemptions expires, all property listed as exempt on the debtor's schedules becomes exempt regardless of whether the debtor "had a colorable statutory basis for claiming it"). Exempt property, however, is not property of the estate. *See* 11 U.S.C. § 522(b)(1). Therefore, the Homestead is not now, nor has it ever been, property in which the Estate has an interest. Consequently, § 506(a)'s unambiguous language prevents the Court from valuing and determining the secured status of SunTrust's lien on the Homestead.

Nevertheless, the Debtor's argument rests almost exclusively on the concept that § 506(a) relief is still available to him based on the reasoning articulated in *In re Bodensiek*, 522 B.R. 737 (Bankr. S.D. Fla. 2015). In *Bodensiek*, the bankruptcy court, applying the analysis of Justice Scalia's dissent in *Dewsnup v. Timm*, 502 U.S. 410 (1992), concludes that

> [t]he only reasonable interpretation of section 506(a) is that it is effective as of the petition date, and so the use of the present tense—"in which the estate has an interest"—means the petition date and not some later date when the court considers a motion to value. Any other interpretation would lead to a series of untenable results.

*Bodensiek*, 522 B.R. at 740. In other words, *Bodensiek* holds that if the estate had an interest in the property on the petition date, a debtor can use § 506(a) to value and determine the secured status of a lien on the property even when the estate no longer has an interest in it.[9] As the Court has already explained, the Estate never had an interest in the Homestead so even under *Bodensiek*, it would seem the Debtor is

---

[9] A closer reading of *Bodensiek* suggests the opinion may go further than described above because the property in question in that case, like in this case, was homestead property. Accordingly, as previously explained, it never was – even on the petition date – property of the estate. The *Bodensiek* opinion does not substantively address how § 506(a) could be used on property that was exempt as of the petition date.

unable to access § 506(a). But in the interest of addressing the Debtor's central argument, the Court notes that even if the Estate had some fictitious interest in the Homestead on the Petition Date, it declines to apply *Bodensiek*'s reasoning.

Neither Justice Scalia's *Dewsnup* dissent nor *Bodensiek* provide a substantive textual analysis to explain why in § 506(a) the phrase "in which the estate has an interest" must be synonymous with "in which the estate had an interest on the petition date." Rather, they rely on the suggestion that the application of the phrase's plain meaning would lead to absurd results.

The Court disagrees. The plain language of the phrase "in which the estate *has* an interest" is not analogous to the phrase "in which the estate had an interest on the petition date." The word "has" is the "third person singular present tense of have."[10] *Has*, American Heritage Dictionary of the English Language (5th ed. 2016).[11] The statute does not use the past tense *had,* although Congress could have easily done so. Therefore, § 506(a)'s use of the word "has" is present tense and means that the estate must have an interest when the court provides the relief.

This interpretation is further bolstered by the Bankruptcy Code's use of different language when it seeks to tie relief to something other than the estate's present interest in property. For example, lien avoidance under 11 U.S.C. § 522(f)(1) allows the debtor to avoid liens "on an interest of the debtor in property" – like the

---

[10] The online source for this definition can be found at https://www.thefreedictionary.com/has.

[11] To "have" "[i]mports ownership and has been defined to mean 'to keep,' 'to hold in possession,' [or] 'to own.'" Black's Law Dictionary 647 (5th ed. 1984).

Homestead. Relief under § 522(f)(1) is, therefore, entirely independent from the estate's interest in the property, while § 506(a) relief is entirely dependent on it.[12] In addition, § 522(b)(3)(A) allows debtors to exempt assets from property of the estate to the extent the exemption is "applicable on the date of the filing of the petition." These are just two examples of the Bankruptcy Code's general clarity about what interest is required and when that interest must exist as a prerequisite to relief.

Absent a semantic basis for its interpretation, *Bondensiek* relies instead on the assertion that the plain meaning interpretation of § 506(a) leads to absurd results because "[p]roperty initially not claimed as exempt, and thus available for distribution, may later be added to the list of exempt assets, making it not subject to administration," leading to the purportedly difficult and complicated questions of how to treat property that was administered before it was claimed exempt, distributions that were made as a result of that administration, and court orders entered based on the property's purported status as estate property. *Bodensiek*, 522 B.R. at 740. However, the Court disagrees with the premise that the answers to these questions would lead to absurd results.

If the debtor claims an exemption later in a Chapter 7 case and that exemption is upheld, the exemption is, by definition, effective as of the petition date and the estate never had the ability to "administer" the property in the first place. 11 U.S.C. § 522(b) & (l); Fed. R. Bankr. P. 1007(c) & 4003(a). If, however, the estate

---

[12] It is worth noting that § 522(f)(1) relief must be divorced from the estate's interest because § 522(f)(1) allows the debtor to avoid liens on exempt property and, as previously explained, the estate has no interest in exempt property.

administered the property before the debtor claimed his exemption, the doctrine of *res judicata* bars the debtor from belatedly claiming the exemption and undoing the property's administration because the prior administration of the property, in almost every circumstance, would have been the appropriate time to adjudicate whether the property was exempt. *See, e.g., In re Wilson*, 446 B.R. 555, 562–63 (Bankr. M.D. Fla. 2011) (holding that *res judicata* barred the debtor from claiming property as exempt where the court had previously ordered turnover of the property). Perhaps there might be some rare circumstance the Court cannot presently envisage where *res judicata* would not bar the debtor from claiming previously administered property as exempt, but in such circumstances a bankruptcy court would have a variety of options, including voiding its prior order, requiring the return of certain distributions, or fashioning some appropriate equitable remedy.

Conversely, Justice Scalia and *Bodenisiek*'s interpretation of § 506(a) produces its own potential absurdities. Under their interpretation, a debtor could return to the bankruptcy court years after the bankruptcy case has concluded, just as the Debtor has here, to value and determine the secured status of a lien on real property in which the estate has long since not had an interest so long as the estate had an interest on the petition date. Imagine circumstances in which the property has increased in value. Is the property to be valued as of the moment the relief is granted or as of the petition date? If as of the petition date years earlier, can the property be reliably valued? Should a lender that has relied upon increasing values be penalized because of the debtor's delay? Are the payments made by the debtor to the lender to

be returned? Is the entry of a foreclosure judgment, or worse, a foreclosure sale, voided or otherwise somehow invalidated? These potential complications are circumvented by interpreting § 506(a)'s phrase "in which the estate has an interest" according to its plain and ordinary meaning.

Accordingly, the Court finds that it cannot provide the Debtor relief under § 506(a) because the Homestead has been exempt since the Petition Date and the Estate does not have an interest in it.[13] Because no provision of the Bankruptcy Code, including §§ 544 and 506, provides authority for the Court to value and determine the secured status of SunTrust's lien on the property in which the Estate does not have an interest, the request does not invoke a substantive right under the Bankruptcy Code, leaving the Court without "arising under" jurisdiction. *See Toledo*, 170 F.3d at 1345; *In re Losada*, 557 B.R. 244, 251 (Bankr. S.D. Fla. 2016) (explaining in the context of a § 506(a) motion that "once property leaves the estate, the bankruptcy court's jurisdiction is limited, and, in most cases, lost").

---

[13] Even if the Estate had such an interest in the Homestead at some point, that interest would have been abandoned when the case was closed on June 11, 2015. *See* 11 U.S.C. § 554(c); *Koppersmith v. United States (In re Koppersmith)*, 156 B.R. 537, 539 (Bankr. S.D. Tex. 1993) ("Based on the legislative history, 'property ceases to be property of the estate, such as by sale, abandonment, or exemption.'" (citing H.R. Rep. No. 95–595, 95th Cong., 1st Sess., 5, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6299)); (Main Case Doc. 41). Though a debtor can request revocation of technical abandonment under certain circumstances, revocation is not automatic, and the time to seek it under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60 has passed. *See In re Cole*, 521 B.R. 410, 415–16 (Bankr. N.D. Ga. 2014) (quoting *Woods v. Kenan (In re Woods)*, 173 F.3d 770, 778 (10th Cir. 1999)); *In re O'Neal*, 374 B.R. 348, 352–53 (Bankr. S.D. Fla. 2007) (citing 5 Collier on Bankruptcy ¶ 554.02(7)(b)); *In re Bast*, 366 B.R. 237 (Bankr. S.D. Fla. 2007); *see also In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 523 (6th Cir. 2008) (holding that revocation of abandonment was not warranted and explaining that relief under Rule 60 is "circumscribed by public policy favoring finality of judgments and termination of litigation"). Therefore, years after the Estate was closed, even if the Homestead was somehow deemed abandoned property, revocation of technical abandonment is not available.

To the extent Count I effectively seeks a declaratory judgment that SunTrust's lien is invalid or otherwise unenforceable because, for example, the statute of limitations for enforcing it has run, such relief is equally unavailable in this court.[14] This type of relief, disconnected from any provision of the Bankruptcy Code, requires "related to" jurisdiction. The Court only has "related to" jurisdiction where the outcome of the proceeding could conceivably affect the estate. *Toledo*, 170 F.3d at 1345. Even under the broadest possible view of the Debtor's complaint, the outcome of this adversary proceeding cannot conceivably affect the Estate. Seeing no possible basis for the Court to assert jurisdiction with respect to Count I, the Court dismisses it with prejudice.

## II. Count II

Count II seeks to quiet title to the Homestead. The Debtor contends the Court has "related to" jurisdiction to quiet title. As the Court explained above, bankruptcy courts have "related to" jurisdiction where the outcome of the proceeding could conceivably affect the Estate. *See id.* There is simply no conceivable way, under these facts, that quieting title to the Homestead, in which the Estate has never had an interest, could affect the administration of the Estate, which was fully administered over six years ago. Therefore, Count II must also be dismissed with prejudice for lack of subject matter jurisdiction.

---

[14] The Debtor acknowledged this functional reality at the Court's September 23, 2021, hearing.

Accordingly, the Court **ORDERS** that the Debtor's Complaint is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction. The Clerk is directed to **CLOSE THIS CASE**.

###

Copies To:
David Langley, Esq.

*David Langley, Esq. is directed to serve a copy of this Order on all interested parties.*